OPINION
{¶ 1} This is an appeal from a final judgment and decree of divorce.
 {¶ 2} The parties, Gary and Marcella Robbins, were married *Page 2 
in 1970. They have no minor children. In 2006, Marcella[1] learned that Gary was having an affair with another woman. Gary moved out of the marital residence at Marcella's request. Marcella filed for divorce several months later.
 {¶ 3} The trial court granted a decree of divorce to both parties on grounds of incompatibility. The court divided their marital property and distributed their separate properties to each of them. The court awarded Marcella her entire pension benefit, which was earned during the years of the marriage, and the marital residence as well. Gary was ordered to pay Marcella spousal support at the rate of one hundred dollars per month for a term of twelve years.
 {¶ 4} Gary filed a timely notice of appeal
FIRST ASSIGNMENT OF ERROR
 {¶ 5} "IT IS RESPECTFULLY SUBMITTED THAT THE TRIAL COURT COMMITTED ERROR AND ABUSED HIS DISCRETION IN THE REFUSAL TO AWARD THE DEFENDANT A PART OF THE PLAINTIFF'S PENSION."
 {¶ 6} The jurisdiction of the court of common pleas and its divisions is determined by statute. Article IV, Section 4(B), Ohio Constitution;Mattone v. Argentina (1931), 123 Ohio St. 393. R.C. 3105.011 provides: "The court of common pleas *Page 3 
including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." However, reflective of the maxim that "equity follows the law," positive statutes govern courts in the exercise of their equity jurisdiction, and courts are not at liberty to apply an equitable interpretation of such statutes in order to avoid a seemingly undesirable result. Hutchings v. Davis (1903), 68 Ohio St. 160. R.C.3105.171 is a positive statute that governs domestic relations courts in the exercise of their equitable jurisdiction. Therefore, with respect to issues of division of marital property, domestic relations courts are bound by R.C. 3105.171.
 {¶ 7} Marcella retired from public employment in 2005, after thirty years of service, which coincided with the years of her marriage to Gary. Marcella draws a pension from the Ohio Public Employees' Retirement System ("PERS") in the amount of $1,583 per month. Evidence was offered showing that, when she retired, Marcella made a lump sum withdrawal of $52,000 from her PERS account, without Gary's knowledge. Marcella spent those funds to pay for her adult daughter's bariatric surgery and for a diamond and a car for herself.
 {¶ 8} Gary is not retired, and continues to work as a *Page 4 
self-employed contractor. He maintains no retirement account of his own. And, because Gary has not filed a federal income tax return for twenty-one years preceding the divorce, it is unlikely that he will be entitled to a Social Security retirement benefit of any significant amount.
 {¶ 9} Marcella's retirement benefit is marital property. R.C.3105.171(A)(3)(a)(i). The domestic relations court is required to divide marital property equitably between the parties, R.C. 3105.171(B). Because "[e]ach spouse shall be considered to have contributed equally to the production and acquisition of marital property," R.C.3105.171(C)(2), an equal division is presumed to be equitable. R.C.3105.171(C)(1). However, "[i]f an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section." Id.
 {¶ 10} The domestic relations court awarded Marcella all of her PERS benefit, denying Gary any right to share in it. The court based its division on the following finding:
 {¶ 11} "Ms. Robbins . . . retired from public service after *Page 5 
30 years of employment on June 30, 2005 which was approximately one month prior to the time that she found out about Mr. Robbins' extramarital affair with (M.D.). The credible evidence in this case suggests that Mr.(sic) Robbins would not have retired had she known about Mr. Robbins' extramarital affair, in that she assumed that the parties would be continuing to live together and share income. Unfortunately for Ms. Robbins, she is in a position where she is now finding it necessary to obtain another job even after she has retired in order to supplement her income and to pay her bills." (Decree, p. 12).
 {¶ 12} R.C. 3105.171(F) sets out eight particular circumstantial factors a court must consider when ordering an unequal division of marital property. A final, ninth factor is: "Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 13} The finding on which the court based its unequal division of Marcella's retirement benefit does not comport with any of the particular circumstances set out in R.C. 3105.171(F)(1)-(8). Neither did the court make the particular express finding that R.C. 3105.171(F)(9) requires. However, we necessarily presume that the court found the facts it cited to be both relevant and equitable to the division of *Page 6 
Marcella's pension the court ordered. The further issue is whether the court abused its discretion in so doing.
 {¶ 14} A divorce action presents three discrete issues for the domestic relations court to determine. The first is grounds for the requested divorce, which are set out in R.C. 3105.01. The second is property division, which is governed by R.C. 3105.171. The third is allocation of parental rights and responsibilities for care of any minor children of the marriage, which is governed by R.C. 3109.04, et seq. That last issue is not involved in the present case.
 {¶ 15} "Adultery" is grounds for divorce. R.C. 3105.01(C). Like several of the other grounds identified in R.C. 3105.01, it is predicated on the misconduct of the other spouse in relation to the obligations a marriage relationship imposes. However, the basis for division of property, marital as well as separate, in R.C. 3105.171, takes no account of the fault of either party, with but one exception.
 {¶ 16} R.C. 3105.171(E)(1) authorizes the court to make a greater award of marital property to one spouse upon a finding that the other spouse "has engaged in financial misconduct, including but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets." Id. Misconduct for which an unequal division of marital property *Page 7 
may be ordered is necessarily financial in character. Loeffler v.Loeffler, (Nov. 20, 1998), Lucas App. No. L-97-1271. Related conduct that produces a party's own adverse financial position may also be considered, as when the court awarded each party his or her own pension, even though the values were vastly different, but the division was equitable because the husband's smaller pension resulted from his own voluntary misconduct, having been fired from his job for drug use and thereby losing his opportunity to increase his pension's value.Leadingham v. Leadingham (1997), 120 Ohio App.3d 496.
 {¶ 17} "In making an equitable distribution of marital property in a divorce proceeding, a trial court may consider the parties' future Social Security benefits in relation to all marital assets." Neville v.Neville, 99 Ohio St.3d 275, 2003-Ohio-3624, Syllabus by the Court.
 {¶ 18} In Neville, the Supreme Court approved a greater award of other marital property to one spouse who had no expectation of a Social Security benefit as an offset against a Social Security benefit the other spouse was entitled to receive. We subsequently applied that principle with respect to division of a spouse's public employee's retirement benefit, approving an offset of the value of the other *Page 8 
spouse's expected Social Security benefit before equally dividing the remaining net public pension benefit between the parties in a divorce action. Walker v. Walker, Greene App. No. 06CA23, 2007-Ohio-331.
 {¶ 19} Gary's failure to file a federal income tax return or pay any federal tax on the income he earned for the twenty-one years preceding the divorce is financial misconduct for purposes of R.C. 3105.171(E). As a result, Gary is in an adverse financial position because any Social Security retirement benefit to which he is entitled will be greatly diminished. Even so, the court could have offset against Marcella's PERS benefit the Social Security retirement benefit Gary will receive, plus any additional amount to which he would have been entitled had he filed the required tax returns. The court didn't impute any such hypothetical amount, perhaps because Gary had no record or recollection of what his income was during the relevant years. Being thus frustrated, the court looked to Gary's misconduct in having an extramarital affair.
 {¶ 20} Gary's misconduct in having an extramarital affair was surely voluntary, but it was not financial misconduct. Rather, accepting the trial court's finding, Gary's misconduct created a financial hardship for Marcella because she would *Page 9 
have continued working had she been aware of it. Instead, Marcella retired, resulting in a diminished income for her, not only because the income she realizes from her PERS benefit is less than she was earning, but also because Gary will no longer contribute to Marcella's needs as he did during their marriage. However, the smaller income she realizes from her retirement account is, in part, a result of Marcella's having withdrawn funds from the account from which the amount of her benefit is determined, which she did without Gary's knowledge. Whether that amounts to a dissipation of assets for purposes of R.C. 3105.171(E) is an issue the trial court did not address. Further, the loss of the contribution to Marcella's needs that Gary made while they were married is a loss that unavoidably results from a divorce, and is instead the subject of a different form of relief which the law allows.
 {¶ 21} The finding on which the court predicated its unequal division of Marcella's pension benefit more directly and specifically relates to an award of spousal support ordered pursuant to R.C. 3105.18, but only after the court has, consistent with the requirements of R.C. 3105.171, divided the parties' property. R.C. 3105.18(B). The purpose of spousal support is "for sustenance and support of the . . . former spouse." R.C.3105.18(A). In ordering spousal *Page 10 
support, the court is charged to consider the incomes of the parties, their earning abilities, retirement benefits, and standard of living during the marriage. R.C. 3105.18(C)(1)(a),(b),(d),(g).
 {¶ 22} R.C. 3105.18(A) provides that spousal support does not include "any payment that is made as part of a division or distribution of property or a distributive award under section 3105.171 of the Revised Code." We believe that that legislative distinction between property division and spousal support likewise supports a corollary principle: that property may not be divided unequally pursuant to R.C. 3105.171 in order to achieve the purposes of sustenance and support for which R.C.3105.18 authorizes an award of spousal support. Doing that permits the court to apply the R.C. 3105.18(C)(1) factors applicable to a spousal support award to an R.C. 3105.171 division of marital property, which is governed instead by R.C. 3105.171(F).
 {¶ 23} R.C. 3105.18(B) provides: "An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable." The court could have acted pursuant to R.C. 3105.18(B) to award all or part of Gary's interest in *Page 11 
Marcella's pension benefit to Marcella as a form of lump sum spousal support, after consideration of the factors in R.C. 3105.18(C)(1) that in the present case are relevant. The fact that the court could have followed that course does not avoid any error the court committed in following a different course to reach the same result.
 {¶ 24} The domestic relations court erred when, absent a finding of financial misconduct on Gary's part, the court denied him the equal share of Marcella's PERS benefit to which he is entitled, in order to satisfy Marcella's need for maintenance and support, which the court is instead authorized to satisfy through a spousal support order. The first assignment of error is sustained.
SECOND ASSIGNMENT OF ERROR
 {¶ 25} "IT IS RESPECTFULLY SUBMITTED THAT THE TRIAL COURT COMMITTED ERROR AND ABUSED HIS DISCRETION IN AWARDING THE PLAINTIFF THE ENTIRE INTEREST IN THE PARTIES' REAL ESTATE."
 {¶ 26} The parties owned a marital residence, which is unencumbered by any mortgage obligation. The court awarded the marital residence, which it valued at $75,000, to Marcella.
 {¶ 27} Marcella filed her own, individual income tax returns during the years the parties were married. The court *Page 12 
found that Gary, on the other hand, failed to file a tax return for the past twenty-one years on the income he made, and as a result will owe substantial taxes and penalties after the IRS is made aware of Gary's failures, which the court stated it would do.
 {¶ 28} Because Gary will face a substantial obligation to the IRS, his equity in the marital residence is in jeopardy of tax liens that could consume the entire value of Gary's interest in the property. For that reason, and perhaps because an IRS execution on those liens would likewise jeopardize Marcella's right to remain in the residence as a one-half owner, the court awarded the residence to Marcella, extinguishing any interest Gary has in the residence.
 {¶ 29} Intertwined with this and other orders the court made is its finding that Gary is not credible, particularly with respect to his income. As a self-employed contractor, he had the ability to conceal much of his income, and apparently did. Indeed, the court was unable to make a finding concerning what Gary's income is or was, because Gary failed or refused to provide that evidence.
 {¶ 30} Gary's failure to file income tax returns is financial misconduct that impairs Marcella's right to use, enjoy, and/or dispose of her own interest in the marital *Page 13 
property. The court is authorized by R.C. 3105.171(D)(3) to "compensate (Marcella) with a distributive award or with a greater award of marital property" on account of Gary's financial misconduct. The court did that by awarding the marital residence to Marcella. No abuse of discretion is demonstrated.
 {¶ 31} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 32} "IT IS RESPECTFULLY SUBMITTED THAT THE TRIAL COURT COMMITTED ERROR AND ABUSED HIS DISCRETION IN AWARDING THE PLAINTIFF ALL OF THE PERSONAL PROPERTY OF THE PARTIES EXCEPT FOR HIS CLOTHING, PERSONAL EFFECTS AND MOTOR VEHICLE."
 {¶ 33} The decree provides that the parties are awarded the personal property in the possession of each, except that, in addition, Gary is "awarded his clothing and personal effects still at the marital residence, providing that he picks them up within thirty days of the date of the filing of this decree. In the event he fails to do so, (Marcella) shall be entitled to dispose of the same as she desires." (Decree, p. 4).
 {¶ 34} Gary argues that the court abused its discretion by failing to award him tools that he uses in his business that were at the marital residence, and therefore in Marcella's *Page 14 
possession. To the extent those tools are among Gary's "personal effects," and we believe they are, Gary's tools were awarded to him. No abuse of discretion is demonstrated.
 {¶ 35} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 36} "IT IS RESPECTFULLY SUBMITTED THAT THE TRIAL (SIC) COMMITTED ERROR AND ABUSED HIS DISCRETION IN REQUIRING THAT THE DEFENDANT PAY SPOUSAL SUPPORT."
 {¶ 37} The trial court reviewed the evidence relevant to the factors the court is required by R.C. 3105.18(F) to consider, and ordered Gary to pay Marcella spousal support in the amount of one hundred dollars per month for a term of twelve years. Gary argues that the trial court abused its discretion because the court also found that Marcella's "listed anticipated expenses are, in this Court's opinion, somewhat exaggerated and her realistic anticipated living expenses should be able to be covered by her income, absent unanticipated expenses which predictably always do arise." (Decree, p. 15).
 {¶ 38} The court also expressed its frustration with Gary's lack of forthrightness, stating:
 {¶ 39} "Mr. Robbins . . . is 58 years of age and is working *Page 15 
on a full time basis, however, the Court is only left to speculate as to how much money he actually makes. Not only was Mr. Robbins evasive with respect to his income, he actually provided no credible testimony whatsoever to establish what his current living expenses are nor what his anticipated living expenses will be in the future. Apparently, he would prefer that the Court not know `his business' and therefore this Court will presume that he has more than adequate income to pay his living expenses as well as a reasonable sum of spousal support if this Court deems the same appropriate." (Decree, pp. 13-14).
 {¶ 40} A spousal support order must balance an obligee's need for support against the obligor's ability to pay. Gary's failure to offer evidence of his actual income permitted the court to fashion an order on the basis of its findings concerning Marcella's need for support. The one hundred dollars per month the court ordered appears to apply to the need to cover unanticipated expenses that the court found Marcella's income was insufficient to cover. No abuse of discretion is demonstrated.
 {¶ 41} The fourth assignment of error is overruled. Nevertheless, because of our ruling on the first assignment of error, we necessarily vacate the spousal support award to *Page 16 
permit the court to recalculate the parties' need and ability to pay based on the share of Marcella's PERS benefit to which the court finds Gary is entitled. The case is remanded to the domestic relations court for further proceedings, consistent with this opinion.
 {¶ 42} Finally, Gary filed a reply brief in which he asks us to strike Marcella's pro se brief on appeal because it is out of form and contains references to evidence not of record. The motion will be Denied.
WOLFF, P.J. And DONOVAN, J., concur.
[1] For clarity and convenience, the parties are identified by their first names. *Page 1